Holmes v. Eason.

J. F. HOLMES v. F. M. EASON et al.

JUSTICES OF THE PEACE. *Relation to parties litigant. Judgment not void. When. Certiorari.* A judgment rendered by a justice of the peace who is related to one of the parties within the prohibited degree, without objection made by the judgment. debtor on that ground, is not void, but voidable only; and, therefore, a *certiorari.*for that cause will not lie to quash an execution issued on the judgment.

---

FROM HENDERSON.

---

Appeal in error from the Circuit Court of Henderson county.    T. P. BATEMAN, J.

LEVI S. WOODS for Holmes.

J. M. TAYLOR for Eason.

COOPER, J., delivered the opinion of the court.

*Certiorari* to supersede and quash a justice's execution, upon the ground that the judgment was void because rendered by a justice related to one of the parties, the judgment creditor, within the prohibited degrees.    The circuit judge dismissed the petition on motion, and the plaintiff appealed.

The judgment was rendered, October 12, 1877, by default, the defendant failing, as he states in his petition, to appear and defend.    The petition was filed January 5, 1882.    It does not state that the petitioner had any defense to the cause of action, or that

the recovery was in any respect unjust. It relies upon the incompetency of the justice, and the alleged fact that the petitioner had not waived that incompe-, tency in writing or otherwise.

The State Constitutions of 1834 and 1870 both provide that no judge shall preside on the trial of any cause when related to either of the parties, by con-sanguinity or affinity, within such degree as may be prescribed by law, "except by consent of all the par-ties." Previously to the Code, the act of 1835, ch. 68, fixed the prohibition within the sixth degree, com-puting by the civil law, without prescribing the mode in which the incompetency might be waived. By the Code, sec. 4098, it was provided that no judge or justice should sit in any cause where he was related to either party, by consanguinity or affinity, within the sixth degree, computing by the civil law, "except by consent of the parties entered of record, or put in writing if the court is not a court of record." By the same section a judge or justice is prohibited to sit in any cause in which he was of counsel or in-terested, except by consent of parties given in like manner.

Under the act of 1835, in a case originating be-fore a justice of the peace and carried to the circuit court by appeal, the defendant filed a plea in abate-ment in the circuit court, alleging that the justice who issued the writ, and sat with the other justices on the trial, (the action being unlawful detainer to recover the possession of a house), was related to the defend--ant's wife within the prohibited degree. The court

held that the objection, if .not waived, had ceased to
have any application to the case, for the appeal va-
cated the .judgment of the justices, and the cause was
to be tried *de novo* before a competent court. It was
said, however, that the objection should have been
taken before the justice, and before a trial on the
merits, and, if not so taken, would be considered as
waived. "For," says Judge Totten in delivering the
opinion, "a party may waive and preclude himself
from taking any objection to a decision on account of
the judge being related to one of the parties; · and
the waiver may be express or by necessary implica-
tion": *Wroe* v. *Greer*, 2 Swan, 172.

. The ruling in that case was followed, under the
provisions of the Code, in *Crozier* v. *Goodwin*, 1 Lea,
125, where there was a contest over the person en-
titled to administer an estate, and an appeal taken
from the judgment to the circuit court for a trial
*de novo.* The objection was made for the first time
in the circuit court that the chairman of the county
court, who presided in the court below, was related
to. one of the litigant parties within the prohibited de-
gree. A party, it was said, could not be allowed to
acquiesce in ' the action of the lower court without
making the objection, and then on appeal show the
relationship as a ground of reversal. It has also been
held that, although the statute requires the waiver to
be of record or in writing, the waiver need not be
by express words, but may be by necessary implica-
tion, as. by a confession of judgment in writing, signed
by .the party, before the incompetent justice: *Hilton* v.

*Miller,* 5 Lea, 395. The case of *Reams* v. *Kearns,* 5 Cold., 217, raised the analogous question of a judgment rendered by a chancellor in a suit in which he had been of counsel. There, the judgment was upon a note taken for property sold under a decree in the cause. The debtor appeared at the same term, and moved to set the judgment aside on the ground of the incompetency of the judge. The chancellor overruled the motion, but this court reversed the ruling, expressing the opinion that the judgment was not merely erroneous but void.

Thus far, the decisions are in substantial accord. They treat the constitutional and statutory provision as matter in abatement of the suit, which should be made before a trial on the merits. For otherwise the parties would be allowed to experiment with the court by tacit acquiescence, and raise the objection when the result of the trial proved to be unfavorable. The only expression of opinion in conflict with this view is found in the assertion in the last of the cases cited, that the judgment rendered by an incompetent judge would be void, but this, in view of the facts of the case, was a mere *dictum* in regard to such judgments generally.

Influenced, however, by this *dictum,* several decisions have been made in conflict with the theory of the cases cited. In *Smith* v. *Pearce,* 6 Baxt., 72, a bill was filed to have the judgment of a justice declared void upon the ground that the justice was related to one of the parties. It was admitted that the justice was related to the judgment debtor, the

complainant, within the prohibited degrees, and that the complainant had, before the trial, waived the incompetency of the justice, but not in writing. Nicholson, C. J., in delivering the opinion of this court, adopted the suggestion of Judge Milligan in *Reams* v. *Kearns*, and held that the judgment of an incompetent judge was void, unless the incompetency was waived in the manner prescribed by the statute. And he called attention to the fact that the case of *Wroe* v. *Greer* arose under the act of 1835, which did not direct the mode in which the objection should be waived. This decision was followed by the same eminent judge in *Pierce* v. *Bowers*, 8 Baxt., 353, where a bill was filed to reach equitable assets for the satisfaction of a justice's judgment, and the defense was made that the justice was related to the judgment creditor within the prohibited degree, and there was no waiver of the incompetency as required by the statute. "The judgment," said his Honor, "was not merely irregular and voidable, but absolutely null and void." This theory was again followed in *Bowling* v. *Anderson*, 4 Baxt., 550, where, upon writ of error in a chancery case, it appeared from the recital of a decree in the cause that another judge presided because of the incompetency of the chancellor, and afterwards the judgment complained of, being a judgment *nisi* against a garnishee, was rendered by the chancellor. It was held that the decree, and all proceedings under it, necessarily failed. And in *Mathis* v. *State*, 3 Heis., 127, a judgment of conviction in a criminal case was reversed, Nicholson, C. J., delivering the opinion, because

it appeared from the record that the judge who tried the case had signed the indictment as attorney-general.

If it be that a judgment is absolutely void which has been rendered by an incompetent judge, and that any party may have it so declared at any time afterwards upon proof of the fact, it would present an anomaly in the law bearing upon judgments and decrees, and lead to some curious results. The statute, it will be remembered, prohibits a judge or justice from sitting when he is related to either of the parties, and if the judgment be void it will be void although rendered against the party to whom the judge is related, and so it was held in *Smith* v. *Pearce*, 6 Baxt., 72. That case is the more remarkable as the complainant had waived the incompetency of the judge, although not in writing, and was yet allowed to annul the judgment upon his own application to a court of equity, without assigning any other ground for relief. It is scarcely possible that the constitutional convention or the Legislature could have contemplated such a result. The constitution and the statute were unquestionably intended to secure to parties litigant the right of trial by an impartial judge, but they do not provide that every judgment rendered by an incompetent judge shall be void. The constitution and the statutes provide that every judge shall be of a certain age, but the acts of a judge under the prescribed age would be valid, not void: *Blackburn* v. *State*, 3 Head, 690. And so of the acts of a judge whose title might be successfully contested: *Turney* v. *Dibrell*,

3 Baxt., 235. These decisions, it is true, are rested upon a principle not applicable to the acts of a judge incompetent from relationship to one of the parties. They show, however, that a constitutional and statutory prohibition do not, necessarily, render judicial acts void.

A void judgment is in legal effect no judgment. It neither binds nor bars any one. All acts performed under it, and all claims derived from it are void. Parties attemping to enforce it are trespassers. No action upon the part of the plaintiff, no inaction upon the part of the defendant, no resulting equity in the hands of third persons, can invest it with any of the elements of vitality: *Sherrell* v. *Goodrum*, 3 Hum., 430; Freeman on Judgments, sec. 117. "No action is required to revoke it; it is null in itself": *Andrews* v. *State*, 2 Sneed, 550. The nullity ought, therefore, to appear on its face. If it be necessary to resort to evidence *aliunde* to impeach it, the judgment may more properly be said to be voidable, not void. And, consequently, the weight of adjudged cases, it is said, is that the judgment of a domestic court of general jurisdiction is not void, except when the court has no jurisdiction over the subject matter of the suit, or when, having such jurisdiction, it is shown by the record to have had no jurisdiction over the judgment defendant: Freeman on Judgments, sec. 116.

At common law, it was well settled that, although no judge ought to act where, from interest or from any other cause, he is supposed to be partial to one of the suitors, yet his action in such case was regarded

as an error or irregularity not affecting his jurisdiction, and to be corrected by a vacation or reversal of his judgment, except in the case of those inferior tribunals from which no appeal or writ of error lies: *Dimes* v. *Grand Junction Canal Co.*, 16 Eng. L. & Eq., 63; *Washington Ins. Co.* v. *Price*, 1 Hopk. Ch., 1. And, generally, if the facts are known to the party recusing, he is bound to make his objection before issue joined, and before the trial is commenced, otherwise he will be deemed to have waived the objection in cases where the statute does not make the proceedings void: *Moses* v. *Julian*, 45 N. H., 52; *Shropshire State*, 7 Eng., 160. The decisions of this court first above cited are in accord with these conclusions. If the objection be raised of record, and the court undertake to proceed notwithstanding, the judgment might be held void under these principles, as was done in *Reams* v. *Kearns.* But if no objection be made, and the court is permitted to go to a trial of the case on the merits, the judgment is clearly not void on its face, and something more than the mere existence of the fact on which the incompetency rests should be required to authorize a resort to another tribunal. The terms of the statute are sufficiently met by holding the proceedings invalid if the objections be made, unless the incompetency be waived in the mode prescribed by the statute. In this view, the judgment would be voidable not void in all cases in which the record failed to show the preliminary objection. And to this conclusion the supreme court of Alabama seems to have come upon a statute which, like ours, required

the consent to be entered of record. "We think," says that court, "that justice will be best subserved by ruling that the disabilities mentioned render the proceedings of the court voidable and not void. These disqualifications may be unknown, or so obscure as to require a judicial decision to determine their existence. It is a serious thing to annul the judgments of the courts, and it ought not to be done where the consent of the parties alone is requisite to their validity, and the entry on the record is the only admissible evidence that it was given": *Hine* v. *Hussey*, 45 Ala., 513. And, we may add, where the statute does not direct that the judgment shall be void in such cases.

The judgment not being void in this case, it can only be impeached by a direct proceeding for the purpose. It cannot be done upon a *certiorari* to quash the execution: *Witt* v. *Hussey*, 10 Hum., 208.

Affirm the judgment.

### PETITION TO REHEAR.

The only point argued when this case was heard, and considered by the court, was whether the justice's judgment, asked to be superseded and quashed, was void or voidable because rendered by a justice who was related to one of the parties within the prohibited degrees. Upon that point no new argument is made, and no new authority adduced. It was scarcely worth while to go to the trouble of making the application, under these circumstances, upon that point.

It is said, however, that the petitioner shows that about the 24th December, 1881, a *venditioni exponas* was issued by the justice on the judgment directing the officer to sell personal property previously levied on, and that, about the same time, an alias execution was also issued. And the court is now asked to sustain the petition so far as it seeks to quash the alias execution. The argument is that the levy on the personal property was *prima facie* a satisfaction of the debt, and, at any rate, that the alias ought not to have been issued until the writ of *venditioni exponas* was returned or accounted for.

The petition does state the issuance of the two writs, that the officer was proceeding under the *venditioni exponas* by advertising the property for sale, and had in his hands the alias execution also, and would "levy it on any property of your petitioner he can find unless restrained." The prayer of the petition is that the order of sale, alias execution, and any other process in the officer's hands be quashed. The petition is not directed to the alias execution, but to all process upon the ground that the judgment was void because of the relationship of the justice. Moreover, it does not appear that the personal property levied on was sufficient to satisfy the judgment, and it does appear that the officer had as yet done nothing with the alias execution. And, although the writs of *certiorari* and *supersedeas* may issue before a levy in a proper case under the act of 1877, ch. 132, yet it cannot be said to be a proper case where there is no averment that the property levied upon is sufficient

to satisfy the debt. The petition was not framed with a view to relief because of the issuance of the two writs, and merely mentions both writs with a view to supersede both upon the ground of the invalidity of the judgment. There is not enough in the petition to entitle the petitioner to any relief.

Petition refused.