IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

JUNE 1994 SESSION

FILED

November 8, 1996

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| JAMES J. BENSON, | ) | |
| | ) | |
| Appellant, | ) | No. 01C01-9401-CC-00026 |
| | ) | |
| | ) | Williamson County |
| v. | ) | |
| | ) | Hon. Donald Harris, Judge |
| | ) | |
| STATE OF TENNESSEE, | ) | (Post-Conviction) |
| | ) | |
| Appellee. | ) | |

For the Appellant:

William M. Leech, Jr.
William H. Farmer
511 Union Street
Nashville, TN 37219-1760

For the Appellee:

Charles W. Burson
Attorney General of Tennessee
            and
Amy L. Tarkington
Assistant Attorney General of Tennessee
450 James Robertson Parkway
Nashville, TN 37243-0493

Joseph D. Baugh, Jr.
District Attorney General
Williamson County Courthouse
P.O. Box 937
Franklin, TN 37065-0937

OPINION FILED:_____

AFFIRMED

Joseph M. Tipton
Judge

**O P I N I O N**

The petitioner, James J. Benson, appeals as of right from the Williamson County Circuit Court's denial of post-conviction relief. He is presently in the custody of the Department of Correction, serving as a Range II, multiple offender, an effective sentence of one hundred and twenty-eight years for convictions of two counts of aggravated kidnaping and one count each of armed robbery, conspiracy, and accessory before the fact to armed robbery, receiving a sentence of sixty years for each of the crimes except the conspiracy, for which he received a sentence of eight years. The convictions and sentences were affirmed on direct appeal on September 7, 1987, and reaffirmed on a petition to rehear on February 16, 1990. State v. Bobby Mitchell, Richard Cook, and James Benson, Williamson County, No. 87-185-III (Tenn. Crim. App. Sept. 27, 1989), app. denied, (Tenn. April 2, 1990).

The petitioner asserts that the trial court erred in its denial because he was denied his right to a fair trial before an impartial judge. He asserts that he is entitled to his convictions being vacated because:

>     (1) The trial court erred in finding that the petitioner did not carry his burden of proving that the trial judge in his original trial solicited a bribe from him during the pendency of his prosecution.

>     (2) The trial court erred in finding that the petitioner knowingly and voluntarily waived the claim of solicitation of a bribe by not raising it prior to his trial.

>     (3) The trial court erred in applying the harmless error standard to the bribe solicitation in this case.

## BACKGROUND

The petitioner's convictions arose out of an October 22, 1985, incident in which two armed masked men entered the home of George Khoury, a well-known Davidson County jeweler who resided in Williamson County, and held the Khoury family at gunpoint. While one of the men remained with the Khoury family, the other drove Mr. Khoury to his jewelry store in the Green Hills area of Davidson County and took

2

$350,000.00 worth of jewelry from the store's inventory. Upon returning to the Khoury home, the two armed men bound the family with duct tape and took another $35,000.00 worth of jewelry from Ms. Khoury, $40.00 from the home safe, and $70.00 from Mr. Khoury's billfold.

An informant, to whom one of the petitioner's codefendants had given a watch from the Khoury jewelry store, informed investigators of the identity of the three men who were involved in this crime. On November 1, 1985, after seeing Mr. Benson apparently loading something into the car at his home, Davidson County officers made a warrantless stop of his car. From the car the officers seized a pair of sunglasses, a pistol and four motel receipts from motels located in Knoxville and Chattanooga, Tennessee, Chamblee, Georgia, and Ft. Lauderdale, Florida. A search warrant was obtained for the petitioner's residence. Officers found no jewelry, but confiscated a Gray sweatshirt and brown cotton work gloves which were later identified as being worn by one of the men involved in the robbery.

All three codefendants were charged in both Davidson and Williamson Counties with offenses growing out of this robbery. By consent, all three were tried jointly before Judge Sterling Gray, Jr., who sat by interchange in Williamson County. On June 6, 1985, petitioner's counsel filed motions to suppress the physical evidence taken from his automobile. Hearings were held on these motions on July 11, July 31, and August 4, 1986. On December 8, 1986, some four months later, Judge Gray denied all of the petitioner's motions. The petitioner's case went to trial, the jury found him guilty of the aforementioned offenses, and Judge Gray sentenced the petitioner to an effective sentence of 128 years.

In October of 1985, the T.B.I. initiated an investigation concerning allegations of bribery and corruption on the part of Judge Gray and his court officer, Irvin

3

Oten. The investigation resulted in indictments being returned against Judge Gray and Oten, and on November 17, 1987, Judge Gray offered his resignation. On May 19, 1988, Oten pled guilty to one count of aiding and abetting bribery of a judicial officer. He received a three-year prison sentence which was suspended, and he was placed on probation for three years. On January 19, 1988, Judge Gray fatally wounded his wife and committed suicide. The case was officially closed on June 27,1989.

## POST-CONVICTION HEARING

At the post-conviction evidentiary hearing, the petitioner testified that on August 4, 1985, Court Officer Irvin Oten met him in the restroom of the Williamson County Courthouse and initiated a conversation by telling him that he looked like he needed a little help. The petitioner told him that yes, he guessed he did, and Oten replied that "everything has a price." When the petitioner questioned him further, Oten responded, "$30,000.00 in jewelry."

The petitioner testified that his lead attorney[1] had noticed him talking with Oten and had become extremely upset, warning the petitioner to stay away from Oten. The petitioner admitted that he had not told his attorneys what Oten had said to him. He then testified that later that day, Oten had again followed him into the bathroom and had given him a piece of paper with the phone number of a grocery store where he could be reached after hours. Counsel again noticed the interaction, and, according to the petitioner, "blew his stack," informing the petitioner that he would "get off" the case if the petitioner had any other contact with Oten.

The petitioner testified that some two weeks later, out of curiosity, he had called the number given to him by Oten but that Oten had not been there and the

---

[1]The petitioner was represented by two partners in a Knoxville law firm. References will be to the lead attorney or counsel and to cocounsel.

petitioner had not left a name or number. He then testified that on November 19, 1986, he had received a message while at the Dayton Golf and Country Club that Judge Gray had called for him and had asked that the petitioner return his call at 8:00 that evening. The petitioner stated that he had called Judge Gray from a Chinese restaurant in Chattanooga that evening and that Gray had asked him if he would "be able to handle the business informed by Oten." According to the petitioner, he told Gray that he did not have the money and Gray responded that he should think about it because the charges against him were serious and he had not yet ruled on the petitioner's motions. The petitioner testified that he had previously known Gray because his ex-wife had been a court reporter for Judge Gray and that he had spoken with Gray over the phone on several occasions when Gray had called for his ex-wife.

The petitioner said that Gray had called the petitioner's mother's home on the morning of December 19, 1986, and had asked that the petitioner call him. The petitioner returned the call from his aunt's home, and an exhibit of the aunt's phone records was introduced into evidence to substantiate the call. The petitioner stated that Gray had reminded him that he would be going to court the following month and that help could still be had. Gray asked if the petitioner had any jewelry because he would like to give his wife some jewelry for Christmas. The petitioner denied having any jewelry, and Gray then asked for half of the money that he supposed the petitioner had gotten for the jewelry. Again the petitioner told Gray that he had no money.

The petitioner testified that he had no other contact with Gray or Oten until the trial began on January 12, 1986. When questioned as to why he had not told his attorneys about the bribe solicitation, he stated that he had been scared that his attorneys would not believe him and might withdraw from his case, as one of the attorneys had earlier threatened. He then testified that on November 7, 1987, after his appeal had been briefed and argued but not decided, he had spoken with another of his attorneys and had told him that he had indeed been solicited for a bribe by Oten and

5

Gray.  He stated that the attorney had told him that he would discuss the case with his other attorney.

On cross-examination, the state questioned the petitioner about the call made from the petitioner's aunt's house on December 19, 1986.  After denying that he had talked to Judge Gray about anything besides Gray wanting jewelry or money, the petitioner admitted that he did not really remember if he had talked to Gray about not being able to appear in court that day on counsel's motion to withdraw.  The petitioner acknowledged that a motion was heard in Judge Gray's court on the morning of December 19, 1986, concerning counsel's motion to be relieved of counsel because the petitioner had not paid all of counsel's fees.  He then stated that he had driven to Williamson County, arriving between 12:00 and 12:30 p.m., only to learn that the motion had already been heard and denied.

The petitioner again stated that he had not told his counsel about the bribe solicitation for fear that they would withdraw from the case.  When he had told his attorney about the solicitation, he stated that his attorney told him that he believed that the appeal would be successful and that the solicitation of a bribe complaint would have to be brought up at a later date.  The petitioner admitted that he had never objected to the trial being held in Judge Gray's court and that he had not told anyone about the bribe solicitation.  He further admitted that at the time he had informed counsel of the solicitation, there had been lots of publicity in the news surrounding an alleged bribe scandal involving Judge Gray and "Bonehead" Scales, a defendant in another case.

Wade Lee Phelps, owner of Wade's Drive-In Market, then testified that the number the petitioner had said Irvin Oten had given him had been the number of his market at which Oten had worked during 1986, the time of the alleged bribe solicitation.  Jerry Sue Ward, a former waitress at the Dayton Golf and Country Club, testified that while working at the club, she had answered the phone and had taken a message for the

petitioner from Judge Gray in which Gray had asked that the petitioner return his call. She testified that she had written down the number Gray had given her on a piece of paper and had given the petitioner the message later that afternoon. Larry Travis, a member of the Dayton Golf and Country Club, testified that he had heard Ms. Ward repeat Judge Gray's number and message when the call had come in. He distinctly remembered that it had been in the late fall of 1986 about mid-afternoon when the call had come in and that many of the men sitting around the club had teased the petitioner about receiving a call from a judge.

Petitioner's former attorneys then testified in the petitioner's behalf. Both counsel testified that they had filed a motion to suppress evidence seized in search of the petitioner's car, his person, and his residence. His counsel detailed the facts surrounding the three-day suppression hearing in which the arresting officers stated that they had gotten all of their information to justify the search of the petitioner's car and home through three unnamed informants ten days after the crime had taken place. The counsel stated that in his opinion, the information was stale and that there had been no basis of knowledge or reliability for the search. He testified that he had fully anticipated that the motion to suppress would be granted. He further testified that the last argument on the motion had taken place on August 4, 1986, and that the ruling had not been made by Judge Gray until December 8, 1986, some four months later, an unusually long delay. He also testified that a motion in limine had been filed to limit a co-conspirator's statement that was made clearly outside the time limits of the conspiracy. According to the petitioner's counsel, the motion was denied after another unusual delay. He then testified that when the petitioner had told him about the attempted bribe solicitation, the case was already on appeal and that he had advised the petitioner that no mechanism was available to raise the issue at that time.

The petitioner's lead attorney testified about the incident between the petitioner and Oten that took place during the suppression hearing. He recalled being

7

very concerned and upset about the communication. Both attorneys testified that they had feared that someone was trying to "set up" the petitioner for additional charges because they believed that their motions to suppress would be successful.

Davidson County Deputy District Attorney General Tom Thurman was called by the petitioner to testify that on October 17, 1985, he had been offered a bribe by Irvin Oten on behalf of a defendant in another case, but he added that at that time, he thought Mr. Oten was joking. He also testified about the investigation and arrest of Judge Gray, stating that Gray had denied all accusations until learning that Oten had been "wired" when they spoke the night before about the bribe solicitation of "Bonehead" Scales. Gray had told Thurman that at that time there were no more bribe solicitations "in the pipeline." On cross-examination, Thurman stated that at no time during the two-year investigation of Gray had there been any information concerning a bribe solicitation in the petitioner's case.

Davidson County Criminal Court Judge Thomas Shriver testified that he had been the district attorney general and had initiated the investigation of Irvin Oten and Judge Gray in October, 1985, after he received several complaints concerning alleged bribe solicitations in Judge Gray's court. He testified that attorney Arnold Peebles had informed his office that Judge Gray could be bribed and that upon inquiry, his assistants informed him of other similar allegations concerning Gray. Judge Shriver stated that the defendant in Mr. Peeble's case had been a male Caucasian. Also, he acknowledged that although the investigation of Judge Gray and Oten had been ongoing at the time of the petitioner's trial, no special measures had been taken to monitor Judge Gray's cases.

Special Agent Richard Wright with the T.B.I. testified concerning his investigation of Judge Gray and Irvin Oten. Wright testified that he had received a call from General Shriver in October, 1985, concerning a purported bribe payment by

8

Howard Scales to Irvin Oten. He testified that when Irvin Oten had been arrested in November, 1987, he had admitted involvement in only two other cases, but that Wright had known that he was not telling the truth because his office had posted surveillance when Oten had accepted money in another case. He also testified that Irvin Oten's father had been involved in a solicitation attempt and that he had later been convicted of that offense. He stated that in the course of the investigation he had learned that Gray had borrowed money from bondsmen and had written several bad checks. He admitted that at the time of the Benson case, his office had not taken any steps to insure that inappropriate gestures were not made by Gray or Oten. He stated that at the time of Judge Gray's death, the state had indictments in four cases but that to his knowledge, there had never been any allegation of misconduct in the petitioner's case. On cross-examination he stated that all allegations involving bribery in Judge Gray's court had involved members of the black community.

Other witnesses called by the petitioner included Mark Beverage, a former assistant district attorney, who testified that Irvin Oten had inappropriately approached him on occasion to discuss individual defendants and their cases. Harry Owens, former chief accountant with the Davidson County Criminal Court Clerk's office, testified that he had been unaware of Judge Gray's financial difficulties until several checks that Gray had cashed through the clerk's office were returned for insufficient funds. Forest Brent, a Davidson County bail bondsman, testified that Judge Gray had borrowed $700.00 from him and that Gray had never repaid him. Bill Thompson, another T.B.I. agent who had assisted in the investigation of Gray and Oten, testified that he had learned that Judge Gray had often sent court officers to retrieve his bad checks and to place illegal numbers bets for him. Floyd Price, the former assistant district attorney who had represented the state in Benson's original trial, testified he had not been made aware of any investigation concerning Oten or Gray during the trial. He also testified that he recalled having participated in serious plea negotiations involving a ten to fifteen-year sentence for the petitioner.

9

Irvin Oten was the first witness called by the state. He testified that he had served as Judge Gray's court officer from September, 1982, until the time of his arrest. He stated that he had pled guilty to the offenses in which he took part in soliciting bribes and that he was currently on probation. Oten admitted that he had taken money from two defendants who had cases pending in Judge Gray's court, but adamantly denied that he had ever spoken with the petitioner. He stated that his job had been to oversee the prisoners being held in the room behind the courtroom, and since the petitioner had been on bond, he would have not had a reason to be in contact with him. He also stated that he would never talk to anyone in the bathroom because it was a public place and because the prisoners in the backroom demanded all of his attention.

On cross-examination Oten testified that he had no prior convictions, but a presentence report which revealed that he had been convicted of passing worthless checks was used to impeach him. He admitted that Judge Gray had sent him to place numbers bets and pick up his bad checks at least once a week.

Ed Yarbrough, the attorney who had represented Irvin Oten in his plea negotiations, testified that the district attorney's office had promised Oten that if he would be truthful and assist them in their investigation of Judge Gray, he would not be incarcerated. He stated that he had advised Oten at that time to cooperate and report any other cases in which a bribe had been solicited.

After the evidentiary hearing, the trial court filed an order and a supporting memorandum with its findings and conclusions. The court concluded that the petitioner failed to prove by a preponderance of the evidence that either Judge Gray or his court officer had solicited a bribe from the petitioner and that the only direct evidence of such a solicitation had come from the petitioner himself. The court noted that the solicitation allegation was refuted by the deliverer of the alleged offer, Irvin Oten, but that both

10

witnesses were convicted felons.  The court found that there was credible evidence that the petitioner spoke with Oten on at least one occasion and that the petitioner had phoned Gray's office on December 19, 1985.  He then noted that the petitioner was scheduled to appear in court on that same day and that it was more probable that rather than returning a purported phone call made by Gray, the petitioner was phoning the judge's office to advise the court that he would be late for his appearance when, in fact, he did appear three and one-half hours late.  He then found that because the circumstances surrounding and the purpose of the December 16 call "were fabricated, . . . little credence [could] be given petitioner's assertions that a bribe was solicited from him."  He then stated that "even if the petitioner had proven the attempt to solicit a bribe, his failure to disclose it before trial would prevent his being entitled to relief."

The court emphasized that the petitioner had been found guilty by a jury and that he had been represented by two preeminent criminal defense attorneys.  He pointed out that the conviction was reviewed by the court of criminal appeals who found that there was "ample, indeed overwhelming evidence from which any rational trier of fact would conclude that all the appellants, . . . were guilty of all these crimes beyond a reasonable doubt."  He noted that Judge Gray's ruling on the motion to suppress evidence had also been reviewed by the appellate court in some detail and had been sustained and that the court had conducted a de novo review of the petitioner's sentence, without a presumption of correctness, and had affirmed it.  In conclusion, the trial court stated that even though the appellate court had conducted an "exhausted review" of the case, "this court has again reviewed the transcript of the trial proceedings and has not found exercise of discretion by Judge Gray that was inappropriate or may have unfairly prejudiced the petitioner."  The court then dismissed the petition for post-conviction relief.

**SUFFICIENCY OF SOLICITATION EVIDENCE**

11

The petitioner first contends that the trial court's conclusion that the petitioner failed to prove by a preponderance of the evidence that Judge Gray solicited a bribe from him is erroneous. He concedes that the only direct evidence of the solicitation is the testimony of the petitioner and Irvin Oten, but he argues that the unrebutted testimony of Jerri Sue Ward and Larry Travis that Judge Gray telephoned the petitioner at the Dayton Golf and Country Club and the unrebutted testimony of the petitioner's attorneys and the attorneys' investigator that there was contact between the petitioner and Oten on two occasions strongly supported the petitioner's allegations. He also notes the unusually long delay in Judge Gray's ruling on the petitioner's pretrial motions.

The state argues that there is ample evidence to support the trial court's conclusions. It points to an inconsistency in the petitioner's testimony concerning the November 19,1986, telephone call supposedly made to Dayton Golf and Country Club in which Judge Gray asked that the petitioner return his call at 8:00 p.m. The petitioner testified that he returned the call at 8:00 p.m. from a Chattanooga restaurant, which would have been 7:00 p.m. Nashville time, which the state contends was inconsistent with Gray's purported message. The state also refutes the December 19, 1986, telephone call by noting that Judge Gray announced at the hearing that day on the attorney's motion to withdraw that he had talked to the petitioner that morning when the petitioner had called to say that he might not be in court on time. The state argues that Oten stated that he had never had any contact with the petitioner and that when Tom Thurman had confronted Gray with the evidence against him, Gray had told him there were "no more cases in the pipeline." Lastly, the state emphasizes that all of the cases in which bribes were alleged involved members of the Afro-American community.

In a post-conviction proceeding, the burden is on the petitioner to prove the factual allegations in his petition by a preponderance of the evidence. Brooks v. State,

12

756 S.W.2d 288, 289 (Tenn. Crim. App. 1988).[2] On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990).

Under the facts and circumstances of this case, we conclude that the evidence in the record on appeal preponderates against the findings of the trial court from which it concluded that the petitioner had not carried his burden of proving by a preponderance of evidence that Judge Gray and Irvin Oten solicited a bribe from him. The state's only direct evidence that the petitioner was not solicited for a bribe was the testimony of Oten. However, the record is replete with instances in which Oten had falsely represented facts to T.B.I. officers. Oten testified more than once that he had never spoken to the petitioner under any circumstance, however this testimony is in direct contradiction to that of the petitioner's attorneys and the attorneys' investigator in this case. Oten also testified falsely concerning his prior record.[3]

In its brief, the state makes much of the fact that Judge Gray had only solicited bribes from the black community. However, former District Attorney General Thomas Shriver testified that he had first been made aware of improper conduct in Judge Gray's court by Arnold Peebles, and the defendant in that case had been white. Officers involved in the investigation of Gray and Oten admitted that no special precautions had been taken to monitor the cases in which Judge Gray was presiding at the time, even after most allegations against Judge Gray had been revealed.

The trial court did not address Judge Gray's unusually long delay in ruling on the petitioner's pretrial motions. It also made no mention of the unrebutted testimony of Jerri Sue Ward and Larry Travis that Judge Gray had telephoned the Dayton Golf and

---

[2] For post-conviction cases filed as of May 10, 1995, petitioners have the burden of proving factual allegations by clear and convincing evidence. T.C.A. § 40-30-210(f).

[3] The record on appeal includes a video tape record of the evidentiary hearing.

Country Club asking for the petitioner.  In conclusion, we hold that the weight of the evidence in this case preponderates against the trial court's finding that the petitioner did not carry his burden in proving that he had been solicitated for a bribe.

**WAIVER**

The petitioner next asserts that the trial court erred in finding that the petitioner had waived the ground for relief based upon Judge Gray's improper conduct by failing to raise it prior to trial.  In his reply brief, the petitioner argues that he did not personally and intentionally relinquish his right to present the bribe solicitation as a ground for review of his conviction and sentence because he timely brought it to the attention of his attorneys.  The state argues that even if the petitioner had told his attorneys about the solicitation attempt at the appellate stage of the proceedings, the petitioner would still have waived the issue because he failed to bring it to their attention at the trial stage.  We agree, first noting the conspicuous absence from the petitioner's excellent briefs of any real attempt to justify his failure to notify his attorney before trial of the solicitations.

Pursuant to T.C.A. § 40-30-112(b)(1), "[a] ground for relief is 'waived' if the petitioner knowingly and understandingly failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented."  Furthermore, there is "a rebuttable presumption that a ground for relief not raised in any such proceeding which was held was waived." T.C.A. § 40-30-112(b)(2).[4] In this respect, our supreme court addressed the issue of waiver under the post-conviction act.  The court held as follows:

[4]For post-conviction cases filed as of May 10, 1995, T.C.A. § 40-30-112 has been replaced by T.C.A. § 40-30-206(g), (h).  1995 Tenn. Pub. Acts ch. 207, § 3.

We further conclude that the rebuttable presumption of waiver is not overcome by an allegation that the petitioner did not personally and therefore, "knowingly and understandingly" waive the ground for relief. Waiver is to be determined by an objective standard under which a petitioner is bound by the action or inaction of his attorney.

House v. State, 911 S.W.2d 705, 706 (Tenn. 1995), cert. denied, 116 S. Ct. 1685 (1996).

In this case, the petitioner had the opportunity both pretrial and in his motion for a new trial to raise the solicitation issue. According to the petitioner, he was first solicited for a bribe during hearings on pretrial motions. He admitted that he did not tell his attorneys of the contact, supposedly because he was afraid they would withdraw from the case. He also admitted that he had not asked that Judge Gray be recused and that he had never objected to Judge Gray presiding over the trial.

The trial court concluded that the petitioner's explanation, that he "feared the ire of his attorneys," did not provide a legally sufficient reason to excuse his failure to raise the issue earlier. We agree. Accordingly, the petitioner has not overcome the presumption of waiver, and this issue is without merit.

## HARMLESS ERROR ANALYSIS

Lastly, the petitioner asserts that the trial court erred in applying the harmless error standard to the facts in this case. He cites State v. Bobo, 814 S.W.2d 353, 358 (Tenn. 1991), for the proposition that constitutional "violations which are defects in the structure of the trial mechanism defy harmless error analysis." He also cites Tumey v. Ohio, 273 U.S. 510, 535, 47 S. Ct. 437, 71 L.Ed.749 (1927), in which the United States Supreme Court held that where a court has a financial interest in its decision, the harmless error standard does not apply. The petitioner asserts that the judicial corruption surrounding Judge Gray at the time of his trial so infected the integrity

15

of the judicial process that he should, _per se_, be granted a new trial by an impartial and disinterested judge.

In its memorandum in support of its order dismissing the post-conviction petition, the trial court concluded that after reading the transcript of the trial proceedings it found that Judge Gray's exercise of discretion had not been inappropriate or had not unfairly prejudiced the petitioner. It noted that while there was valid evidence that Judge Gray had been performing official acts for personal motive, and that his abuses of office had been known to law enforcement authorities, the facts did not necessarily suggest that Gray had acted improperly in this case. As stated previously, the court emphasized that the defendant had been found guilty by a jury, that the petitioner had been represented by two preeminent criminal defense attorneys, and that this court had reviewed the petitioner's convictions and the sentences and had found them to be correct and appropriate. However, even in finding no prejudice, it went on to conclude that the petitioner's failure to raise timely the alleged impropriety constituted waiver.

While this court wholeheartedly agrees with the petitioner's position that Judge Gray's conduct directed toward defendants from whom he solicited bribes was illegal and that the Due Process Clause of the Fourteenth Amendment of the United States Constitution guarantees every defendant the right to a fair trial with a disinterested and impartial trial judge, we must agree with the trial court that the petitioner in this case waived any right to challenge the partiality of the trial judge. T.R.A.P. 36(a), in pertinent part, states that "[n]othing in this rule shall be construed in requiring relief be granted to a person responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." In State v. Simerly, 612 S.W. 2d 196, 197 (Tenn. Crim. App. 1980), this court concluded that even constitutional issues could not be considered on appeal when there was no contemporaneous objection and they were not presented in the motion for a new

16

trial. Adopting language from Hill v. State, 513 S.W.2d 142, 143 (Tenn. Crim. App. 1974), the court quoted the following:

> "While recognizing the authority that holds constitutional questions may be raised at any time, we believe that rule applies only to fundamental constitutional defects in the convicting process not waived or not subject to waiver. To apply the rule to questions of evidence admissibility would undercut the very function of the trial process, for if it would become a tactical matter of defense to allow a bit of constitutionally inadmissible evidence into the record, in the hope for an acquittal but secure in the knowledge that a new trial would result... Search and seizure, fifth amendment, due process, equal protection, right to counsel, or one of the many constitutional provisions lies at the bottom of most trial proceeding questions. **We cannot say that constitutional questions enjoy an immunity from not being raised at the trial without by so doing destroying the trial process itself.**"

State v. Simerly, 612 S.W.2d at 197 (emphasis added).

In Holmes v. Eason, 76 Tenn. 754 (1882), our supreme court held that a judgment rendered by a justice of the peace who was related to one of the parties within the prohibited degree, without objection made by the other party on that ground, was not void but merely voidable. The court reasoned that an objection should be made before trial, "[f]or otherwise, the parties would be allowed to experiment with the court by tacit acquiescence, and raise the objection when the result of the trial proved to be unfavorable." Id. at 756-57.

We agree with the above rationale. In the case at bar, the petitioner did not inform his attorneys of the bribe solicitation until the case was on appeal, supposedly because he feared the anger of his attorneys and the fact that they might withdraw from his case. Had the issue been raised immediately after the first solicitation attempt, a motion for recusal would have been appropriate. Instead, the petitioner waited to come forth with this complaint until the motion for new trial had been heard and denied and the proceedings were in the appellate stage. A plausible inference from the petitioner's delay in raising this issue is that he was contemplating raising the money. By not contesting the partiality of the trial court immediately, the petitioner may have been

17

keeping his options open, realizing that if he received an unfavorable verdict and sentence, he could raise the issue on appeal and obtain a new trial.

While recognizing the critical importance of maintaining the integrity of our criminal justice system, we cannot accept the petitioner's argument that even after failing to raise his claim timely, his convictions should be vacated and he should be granted a new trial. Rather, as we have previously stated, we hold that the petitioner waived his right to raise this issue at this time.

## CONCLUSION

In consideration of the foregoing and the records of the original trial, the direct appeal, and the post-conviction proceeding, we conclude that the evidence in the record on appeal preponderates against the trial court's conclusion that the petitioner had not proven by a preponderance of the evidence his allegation that he was solicited for a bribe by the trial court and its officer. However, we further conclude that the petitioner has waived his right to raise this issue at this time. Accordingly, the judgment of the trial court in its denial of post-conviction relief is affirmed.

_____
                Joseph M. Tipton, Judge

CONCUR:


_____
David H. Welles, Judge


_____
Stephen M. Bevil, Special Judge
_____