IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 27, 2022

## MOLLY LEANN GREEN v. MICHAEL WAYNE GREEN

Appeal from the Juvenile Court for Fentress County
No. 2016-JV-144, 2014-JV-160   Daryl A. Colson, Judge

_____

### No. E2022-01518-COA-T10B-CV
_____

This is an interlocutory appeal as of right, pursuant to Rule 10B of the Rules of the Supreme Court of Tennessee, filed by Molly Leann Green ("Mother"), seeking to recuse the judge in this case involving parenting issues. Having reviewed the petition for recusal appeal filed by Mother and the answer filed by Michael Wayne Green ("Father") pursuant to this Court's order, and finding no error, we affirm.

**Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right;**
**Judgment of the Juvenile Court Affirmed**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and W. NEAL MCBRAYER, J., joined.

Vanessa Samano, Knoxville, Tennessee, for the appellant, Molly Leann Green.

Melanie Stepp Lane, Jamestown, Tennessee, for the appellee, Michael Wayne Green.

## OPINION

Mother and Father were divorced in 2014 by order entered by Judge Todd Burnett of the General Sessions Court for Fentress County ("the General Sessions Court"). At that time, Mother and Father had one minor child. After the divorce, Mother and Father reconciled and had a second child but did not remarry. Father filed a petition to establish parentage of the second child in the Juvenile Court for Fentress County ("the Juvenile Court"). Judge Burnett entered orders in July of 2016 establishing parentage and modifying the parties' parenting plan to include both children.

Paula Akers works as an assistant to Judge Burnett. Ms. Akers was married to

Father's father some years ago, but Ms. Akers and Father's father were divorced approximately eighteen years ago.[1]

On August 26, 2021, Mother filed in the General Sessions Court a petition to modify the parenting plan and for an ex parte restraining order. Judge Daryl Colson entered two ex parte restraining orders on August 27, 2021, which restrained Father from exercising parenting time with the parties' children. On August 30, 2021, Judge Burnett recused himself upon motion filed by Mother. On August 31, 2021, Judge Colson held a hearing on the ex parte restraining orders and dismissed them.

During the hearing before Judge Colson on August 31, 2021,[2] Mother observed Ms. Akers sitting next to Judge Colson and talking to the judge. Although Mother could not hear what was being said, she "became very worried" because Ms. Akers was "connected to [Father] through family." Despite being concerned, Mother took no action to recuse the judge at that time.

Over the next few months, Judge Colson held hearings and entered more orders in this case. On November 22, 2021, Judge Colson entered another ex parte restraining order upon motion filed by Mother. On November 23, 2021, an agreed order was entered dismissing that restraining order. In January of 2022, Father responded to discovery propounded by Mother and identified Ms. Akers as a person who may have information related to the case. In April of 2022, Judge Colson entered an agreed order consolidating the General Sessions case into the Juvenile Court case and an agreed order allowing Mother to amend her petition to modify the parenting plan. In May of 2022, Judge Colson entered an order allowing Mother's current attorney to substitute for Mother's previous attorney.

In August of 2022, Father filed a motion for a protective order regarding discovery. Mother's attorney set that motion for hearing on September 28, 2022. Father and his counsel appeared for the hearing. Neither Mother nor her counsel appeared at the hearing, despite the fact that Mother's counsel had set the hearing. Judge Colson entered an order on October 6, 2022, granting Father's motion for a protective order.

Sometime in mid-October, Mother had a conversation with Patrick Clark, whom Mother identified as a "local attorney." Mother reported that Mr. Clark told Mother that Judge Colson was "tight" with Ms. Akers and Judge Burnett and informed Mother about a Facebook post wherein Judge Colson had endorsed Judge Burnett in a judicial race.

---

[1] Mother testified that Ms. Akers had been Father's step-mother "for at least twenty-five years." Father testified that Ms. Akers and his father divorced "maybe eighteen years ago," but he was uncertain of the date.

[2] Mother's petition for recusal appeal states that she observed Ms. Akers during a hearing on August 21, 2021. The Juvenile Court's order, however, shows that the hearing was held on August 31, 2021. As Mother's motion seeking an ex parte restraining order was filed on August 26, 2021, the date provided in Mother's petition for recusal appeal appears to be a typographical error.

On October 18, 2022, Mother filed a motion to recuse Judge Colson based upon her conversation with Mr. Clark and the Facebook post wherein Judge Colson had endorsed Judge Burnett in a judicial race. The motion alleged that it appeared "this Honorable Judge has a signification [sic] relationship with Father's Step-Mother and her superior (also the former Judge on this matter before he recused himself), Honorable Judge Todd Burnett." Father filed a response to the motion. By order signed October 20, 2022, Judge Colson denied the motion to recuse after finding:

> This Court's endorsement as to the fitness of another judge has no bearing or a reflection upon the Judge's assistant and certainly not to the former step-child of an assistant. Furthermore, the Court places no weight on the purported statement of the local attorney who the movant claims, without proof, that this Judge and the assistant to Judge Burnett are "tight". This Court finds that statement to be without factual basis. The Court finds no evidence was introduced to support such a statement.

Mother timely filed her petition for recusal appeal to this Court. After a review of Mother's petition, this Court entered an Order on October 28, 2022, granting a motion to stay proceedings in the Juvenile Court pending disposition of the recusal petition and, pursuant to Tenn. Sup. Ct. R. 10B, § 2.05, ordering Father to file a response to the recusal petition. Father timely filed a response in compliance with our October 28, 2022 Order. Father also filed a motion to transfer the appeal to the Middle Section of this Court in Nashville.

We begin by addressing Father's motion to transfer this appeal to Nashville. Father's motion provides no legal support whatsoever for this request. Additionally, the motion fails to comply with Rule 22 of the Tennessee Rules of Appellate Procedure, which requires: "Each copy of a motion shall be accompanied by a memorandum of law and if the motion is based on matters not appearing of record, by affidavits or other evidence in support thereof." Tenn. R. App. P. 22(a). Father's motion to transfer this appeal is hereby denied.

In her petition for recusal appeal, Mother raises two issues, which we restate as: 1) whether Judge Burnett erred by failing to follow the procedure set forth in Tenn. Sup. Ct. R. 10B to transfer the case when he recused himself, and 2) whether Judge Colson erred in denying the motion for recusal when the judge's relationship with Ms. Akers and the in-court conduct of Ms. Akers allegedly give the appearance of bias. In his response, Father raised an additional issue regarding whether this appeal should be deemed frivolous and Father awarded attorney's fees. We will address these issues in turn.

With regard to Mother's issues, we review a trial court's ruling on a motion for recusal under a de novo standard of review with no presumption of correctness. Tenn. Sup. Ct. R. 10B, § 2.01. "The party seeking recusal bears the burden of proof, and 'any alleged

bias must arise from extrajudicial sources and not from events or observations during litigation of a case.'" *Neamtu v. Neamtu*, No. M2019-00409-COA-T10B-CV, 2019 WL 2849432, at \*2 (Tenn. Ct. App. July 2, 2019) (quoting *Williams by & through Rezba v. HealthSouth Rehab. Hosp. N.*, No. W2015-00639-COA-T10B-CV, 2015 WL 2258172, at \*5 (Tenn. Ct. App. May 8, 2015)).

"In a Tennessee Supreme Court Rule 10B appeal, the only order we may review is the trial court's order that denies a motion to recuse. Pursuant to [Tennessee Supreme Court Rule 10B], we may not review the correctness or merits of the trial court's other rulings . . . ." *Duke v. Duke*, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012).

Mother's first issue asks this Court to review an order other than the one in which Judge Colson denied Mother's motion to recuse. As Rule 10B precludes this Court from considering the correctness or merits of other rulings, we will not consider Mother's first issue.

Turning to Mother's second issue, we note that in her petition for recusal appeal, Mother asserts that Ms. Akers engaged in "inappropriate conduct toward Judge Colson in the courtroom when Judge Colson was on the bench in August." During the hearing on Mother's motion to recuse, Mother testified that Ms. Akers was "standing beside Judge Colson to his right" and sitting on a seat on the bench beside the judge. Mother testified that she observed Ms. Akers "talking to the judge and every one else that was in there." Mother admitted that she does not know what Ms. Akers said during those conversations.

As this Court has explained:

> Under Tennessee Supreme Court Rule 10B, section 1.01, "[a]ny party seeking disqualification, recusal, or a determination of constitutional or statutory incompetence of a judge of a court of record . . . shall do so by a written motion filed promptly after a party learns or reasonably should have learned of the facts establishing the basis for recusal." Tenn. Sup. Ct. R. 10B, § 1.01; *Cain-Swope v. Swope*, 523 S.W.3d 79, 88 (Tenn. Ct. App. 2016), *perm. app. denied* (Tenn. April 12, 2017) (citation omitted) ("[A] recusal motion must be filed promptly after the facts forming the basis for the motion become known, and the failure to assert them in a timely manner results in a waiver of a party's right to question a judge's impartiality.").

*Xingkui Guo v. Rogers*, No. M2020-01321-COA-T10B-CV, 2020 WL 6781244, at \*2-3 (Tenn. Ct. App. Nov. 18, 2020).

In the *Guo* case, Mr. Guo learned of the facts establishing a possible basis for recusal but then waited more than four months and until after he had received a ruling adverse to him before filing a motion for recusal. *Id*. at \*2-3. The *Guo* Court explained:

- 4 -

"[c]ourts frown upon the manipulation of the impartiality issue to gain procedural advantage and will not permit litigants to refrain from asserting known grounds for disqualification in order 'to experiment with the court . . . and raise the objection later when the result of the trial is unfavorable.'" *Kinard [v. Kinard,]* 986 S.W.2d [220,] at 228 [ (Tenn. Ct. App. 1998) ] (quoting *Holmes v. Eason*, 76 Tenn. 754, 757 (1882)).

*Id*. at *3 (quoting *Cain-Swope v. Swope*, 523 S.W.3d 79, 88 (Tenn. Ct. App. 2016). The Court pointed out: "If Mr. Guo had legitimate grounds for recusal stemming from the trial court's denial of his motion for sanctions, it was incumbent on him to bring his concerns to the trial court's attention promptly." *Id*.

This Court has further explained:

It is significant "to recognize that a party may lose the right to challenge a judge's impartiality by engaging in strategic conduct." *Duke v. Duke*, 398 S.W.3d 665, 670 (Tenn. Ct. App. 2012) (citing *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998)). . . . Consequently, recusal motions must be filed "promptly after the facts forming the basis for the motion become known, . . . and the failure to assert them in a timely manner results in a waiver of a party's right to question a judge's impartiality." *Kinard*, 986 S.W.2d at 228 (citing *United States v. Baker*, 441 F. Supp. 612, 616 (M.D. Tenn. 1977); *Hunnicutt v. Hunnicutt*, 248 Ga. 516, 283 S.E.2d 891, 893 (Tenn. 1981); *In re Cameron*, 126 Tenn. 614, 658, 151 S.W. 64, 76 (Tenn. 1912)).

*Dialysis Clinic, Inc. v. Medley*, No. M2017-00269-COA-T10B-CV, 2017 WL 1137100, at *6 (Tenn. Ct. App. March 27, 2017). In *Dialysis Clinic*, the plaintiff waited nearly two months after learning of possible grounds for recusal before seeking recusal. *Id*. at *7. The *Dialysis Clinic* Court held that because of the delay, the plaintiff was estopped from arguing that recusal was warranted. *Id*.

The *Dialysis Clinic* Court also discussed the case of *Gotwald v. Gotwald* wherein the trial court informed the parties of a possible ground for recusal and neither party objected until after "a lengthy trial." *Id*. The *Dialysis Clinic* Court noted that the *Gotwald* Court had "suggested that the party's failure to object violated Rule 6 of the Rules of the Tennessee Court of Appeals, which requires that appellants show in their briefs 'how [any] alleged error was seasonably called to the attention of the trial judge'" and had reiterated that a party "may not silently preserve the [occurrence of a prejudicial event] as an 'ace in the hole' to be used in event of an adverse decision." *Id*. (quoting *Gotwald v. Gotwald*, 768 S.W.2d 689 (Tenn. Ct. App. 1988)).

The hearing wherein Mother observed Ms. Akers in the courtroom standing and

sitting beside Judge Colson and speaking to the judge occurred in August of 2021. Mother, however, did not file a motion for recusal until October of 2022. Given that over one year elapsed between the time that Mother saw Ms. Akers in the courtroom in August of 2021 and the time that Mother filed her motion for recusal, we cannot consider that Mother promptly and seasonably called the issue to Judge Colson's attention. As such, Mother waived any issue she might have raised with regard to Ms. Akers's behavior in the courtroom in August of 2021 by not raising the issue in a prompt, timely manner. Furthermore, the conduct that Mother testified about, *i.e.,* a court employee standing and sitting next to a judge and speaking to the judge, hardly qualifies as "inappropriate conduct toward Judge Colson in the courtroom when Judge Colson was on the bench."

With regard to Mother's assertion that Judge Colson and Ms. Akers are "tight," it is unclear exactly what Mother means by "tight." What is clear is that Mother is alleging that Judge Colson and Ms. Akers have some sort of relationship that would warrant recusal. Mother bore the burden to prove that Judge Colson and Ms. Akers are "tight," and that this somehow warrants recusal. As this Court explained in *Neamtu v. Neamtu*:

> "[A] party challenging the impartiality of a judge 'must come forward with some evidence that would prompt a reasonable, disinterested person to believe that the judge's impartiality might reasonably be questioned.'" *Duke*, 398 S.W.3d at 671 (quoting *Eldridge v. Eldridge*, 137 S.W.3d 1, 7-8 (Tenn. Ct. App. 2002)). When reviewing requests for recusal alleging bias, "it is important to keep in mind the fundamental protections that the rules of recusal are intended to provide." *In re A.J.*, No. M2014-02287-COA-R3-JV, 2015 WL 6438671, at \*6 (Tenn. Ct. App. Oct. 22, 2015), *perm. app. denied* (Tenn. Feb. 18, 2016). **"The law on judicial bias is intended 'to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality, or favor.'"** *Id.* (quoting *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009)).
>
> The terms "bias" and "prejudice" usually refer to a state of mind or attitude that works to predispose a judge for or against a party, but not every bias, partiality, or prejudice merits recusal. *Watson v. City of Jackson*, 448 S.W.3d 919, 929 (Tenn. Ct. App. 2014) (citing *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994)). **"'Even though the judge is expected to have no bias at the beginning of the trial, he must, perforce, develop a bias at some point in the trial; for the decision at the conclusion of the trial is based upon the impressions, favorable or unfavorable, developed during the trial.'"** *Id.* at 933 (quoting *Spain v. Connolly*, 606 S.W.2d 540, 544 (Tenn. Ct. App. 1980)). To merit disqualification, the prejudice must be of a personal character, directed at the litigant, and stem from an extrajudicial source resulting in an opinion on the merits on some basis other than what

the judge learned from participation in the case. *Id*. at 929. "A trial judge's opinions of the parties or witnesses that are based on what he or she has seen at trial are not improper and 'generally do[ ] not warrant recusal.'" *Id*. at 933 (quoting *Neuenschwander v. Neuenschwander*, No. E2001-00306-COA-R3-CV, 2001 WL 1613880, at *11 (Tenn. Ct. App. Dec. 18, 2001)).

*Neamtu*, 2019 WL 2849432, at *3 (quoting *In re Samuel P.*, No. W2016-01592-COA-T10B-CV, 2016 WL 4547543, at *2 (Tenn. Ct. App. Aug. 31, 2016)).

In support of her assertion that Judge Colson and Ms. Akers are "tight," Mother produced her testimony about her conversation with Mr. Clark, a non-party, non-witness in this case, and a copy of a Facebook post where Judge Colson endorsed Judge Burnett in a judicial race. The reported opinion of a non-party, non-witness who allegedly told Mother that Judge Colson and Ms. Akers are "tight" is simply insufficient to "prompt a reasonable, disinterested person to believe that the judge's impartiality might reasonably be questioned." *Id*. (quoting *Duke*, 398 S.W.3d at 671). With regard to the Facebook post, the Code of Judicial Conduct contained in Rule 10 of the Rules of the Supreme Court provides that a judge may: "publicly endorse or oppose judges or judicial candidates in a partisan, nonpartisan, or retention election for any judicial office." Tenn. S. Ct. R. 10, Canon 4.2(C)(4). We find nothing improper in Judge Colson's endorsement of Judge Burnett in a judicial race. Furthermore, we agree with the statement made by Judge Colson in his order denying recusal that a judge's endorsement of another judge "has no bearing or reflection upon the Judge's assistant and certainly not on the former step-child of an assistant." The endorsement simply does not show that Judge Colson holds any prejudice of a personal character directed at either of the parties. Mother bore the burden to produce "evidence that would prompt a reasonable, disinterested person to believe that the judge's impartiality might reasonably be questioned," and Mother failed to carry that burden. *Id*. (quoting *Duke*, 398 S.W.3d at 671).

"[A] judge should not decide to recuse unless a recusal is truly called for under the circumstances." *Rose v. Cookeville Reg'l Med. Ctr.*, No M2007-02368-COA-R3-CV, 2008 WL 2078056, *2 (Tenn. Ct. App. May 14, 2008). This is true because "'[a] judge has as much of a duty not to recuse himself absent a factual basis for doing so as he does to step aside when recusal is warranted.'" *Id*. (quoting *Mass v. McClenahan*, No. 93 Civ. 3290 (JSM), 1995 WL 106106, *1 (S.D.N.Y. Mar. 9, 1995)). Recusal based upon an asserted appearance of bias or prejudice "is appropriate only if the facts provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality." *Id*. (quoting *In Re United States*, 666 F.2d 690, 695 (1st Cir. 1981)).

Judge Colson had a duty not to recuse unless recusal was "truly called for under the circumstances." *Id*. The circumstances in this case simply do not show facts that "provide what an objective, knowledgeable member of the public would find to be a reasonable basis

for doubting [Judge Colson's] impartiality." *Id.* As such, we find no error in Judge Colson's decision to deny Mother's motion for recusal.

Finally, we address Father's issue regarding whether this appeal should be deemed frivolous and Father awarded attorney's fees. "'A frivolous appeal is one that is 'devoid of merit,' or one in which there is little prospect that [an appeal] can ever succeed.'" *Morton v. Morton*, 182 S.W.3d 821, 838 (Tenn. Ct. App. 2005) (quoting *Industrial Dev. Bd. of the City of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995)). Tennessee Code Annotated § 27-1-122 provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122. In the exercise of our discretion, we decline to find this appeal frivolous and further decline to award Father attorney's fees and costs incurred in this appeal.

The stay of this case imposed in our October 28, 2022 order is hereby lifted, and this case is remanded for further proceedings. The costs of this appeal are taxed to the appellant, Molly Leann Green, for which execution may issue.

_____
KRISTI M. DAVIS, JUDGE