# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### NOVEMBER 1998 SESSION

FILED

March 15, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 03C01-9712-CR-00543 |
| | ) | |
| vs. | ) | Knox County |
| | ) | |
| DUSTIN DWAYNE DAVIS, | ) | Hon. Ray L. Jenkins, Judge |
| | ) | |
| Appellee. | ) | (Especially Aggravated Robbery, |
| | ) | Aggravated Rape - 2 counts, |
| | | Theft, Especially Aggravated |
| | | Kidnapping) |

FOR THE APPELLANT:

**GREGORY P. ISAACS** (on appeal)
Attorney at Law
P.O. Box 2448
Knoxville, TN 37901

**SUSAN E. SHIPLEY** (at trial)
Attorney at Law
602 S. Gay St., Ste. 501
Knoxville, TN 37902

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**TODD R. KELLEY**
Assistant Attorney General
425 Fifth Ave. N., 2d Floor
Nashville, TN 37243-0493

**RANDALL E. NICHOLS**
District Attorney General

**ROBERT JOLLEY**
Asst. District Attorney General
City-County Bldg.
Knoxville, TN 37902

OPINION FILED:_____

AFFIRMED

**JAMES CURWOOD WITT, JR., JUDGE**

## OPINION

The defendant, Dustin Dwayne Davis, appeals from his convictions of especially aggravated robbery, theft, especially aggravated kidnapping and two counts of aggravated rape. He received these convictions in the Knox County Criminal Court following a trial before a jury of his peers. He is presently serving an effective 100-year sentence consecutively to a sentence for other criminal activity. In this appeal, he raises several challenges to his convictions:

1. Whether the trial judge erred in presiding at trial after initially recusing himself.
2. Whether the evidence sufficiently supports the jury's findings of guilt beyond a reasonable doubt of the five convictions.
3. Whether he was denied a fair trial by the trial court's admission of evidence of the victim's pregnancy and subsequent abortion.
4. Whether the trial court properly denied his motion for judgment of acquittal on the especially aggravated kidnapping count and two of the three aggravated kidnapping counts.
5. Whether the trial court properly sentenced him to an effective 100 year sentence.

Finding no error in the proceedings below, we affirm the judgment of the trial court.

In the late evening hours of August 7, 1991 or early morning hours of August 8, 1991, the defendant and another man identified only as "Baby" approached 20-year-old S.W. and her 16-year-old female companion, M.T,[1] outside the Carousel Club in Knoxville. The men asked if they could buy the women a beer, and the women accepted. The group went to the men's vehicle, where the defendant and S.W. got into the front seat and their companions got into the back seat.

The defendant began driving toward Magnolia Avenue, and S.W. inquired why they were not going to Cumberland Avenue. The defendant replied

---

[1] The names of the young women the defendant and his companion victimized are of no consequence to the issue presented in this appeal. Thus, we identify them only by their initials.

that beer was cheaper on Magnolia.

After the beer was purchased, S.W. told the defendant that she and M.T. needed to go back to the Carousel. The defendant said okay but drove in the opposite direction. He said they were going to his cousin's house. They drove through a housing project area, and the defendant said his cousin was not home.

S.W. again told the defendant she was ready to go back to the Carousel. She asked the defendant where they were going, and he replied that people had been killed and raped in the area but she did not need to worry about that.

The defendant pulled into a dead-end road near a ball park. The defendant asked to see S.W.'s jewelry and inquired about its authenticity. S.W. again asked to go back to the Carousel and said she and M.T. would walk back if necessary. The defendant said, "You won't get anywhere" and took a lead pipe from under the car seat. He threatened to hit S.W. with the pipe. S.W. and M.T. attempted to escape the car, but they were unsuccessful. The defendant hit M.T. on the leg with the pipe.

The defendant pulled S.W. by her long hair to the hood of the car, where he hit her in the face with his fist until she surrendered her diamond ring. The defendant then pulled S.W. up by her hair and then forcibly led her to the ball field. At the top of a flight of steps, he demanded her watch. She surrendered it, and he pushed her toward the steps.

The defendant demanded that S.W. perform oral sex on him, and she told him she had a venereal disease in her throat to try to get out of the situation.

3

The defendant forced S.W. to remove her pants, and he forced her down and penetrated her anally. He told her if she moved he would strike her with the lead pipe.

The defendant became angry when S.W. would not perform as he demanded. He yanked her up by her hair and hit her on the leg with the pipe. A car drove by and frightened the defendant, and he made S.W. pick up her clothes and walk over to the dugout. Inside dugout, the defendant forced himself on S.W. vaginally.

While these events were transpiring, the defendant's companion demanded M.T.'s jewelry. He told her that if she did not turn it over, the defendant would take it anyway, and she would rather have him take it than the defendant. The defendant's companion told M.T. to take off her clothes. When she refused, he told her that the defendant would make her do it. However, he took no steps to force her to comply with his demand. M.T. eventually convinced the defendant's companion to yell to check on S.W.

The defendant's sexual assault of S.W. ceased when M.T. began yelling from the area above. The defendant's companion appeared, and the defendant took more jewelry from S.W. after hitting her several times. While this was going on, M.T. flagged down a car. The defendant and his companion fled.

I

The defendant complains that the trial court erred by presiding at trial after initially recusing himself. On March 30, 1993, Judge Ray L. Jenkins entered an order recusing himself and the other Knox County Criminal Court judges "because the victim of the alleged crimes is an employee of the Knox County

4

Criminal Clerk's Office." Judge Bill Swann, sitting by interchange, presided until April 16, 1996, on which date the court minutes reflect Judge Swann ordered the cases transferred to Judge Jenkins for trial, "[t]he reason for . . . [the transfer] . . . no longer existing . . . ." The record reflects no objection whatsoever prior to trial, at trial, or in the motion for new trial.

The Code of Judicial Conduct provides that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned . . . ." Tenn. R. Sup. Ct. 10, Canon 3(E)(1). When a judge is disqualified under the Code, he "may disclose on the record the basis of the judge's disqualification and may ask the parties and their lawyers to consider, out of the presence of the judge, whether to waive disqualification." Tenn. R. Sup. Ct. 10, Canon 3(F). If the basis for the disqualification is any reason other than personal bias or prejudice concerning a party and "the parties and lawyers agree, without the participation of the judge, . . . that the judge should not be disqualified, the judge may participate if he is willing." Tenn. R. Sup. Ct. 10, Canon 3(F). Such agreement shall be reflected in the record. Tenn. R. Sup. Ct. 10, Canon 3(F).

The law relating to recusal further provides that failure to raise an issue regarding the judge's impartiality in a timely manner may result in waiver. See, e.g., Thompson v. State, 958 S.W.2d 156, 171-72 (Tenn. Crim. App. 1997).

> For otherwise the parties would be allowed to experiment with the court by tacit acquiescence, and raise the objection when the result of the trial proved to be unfavorable.
> . . .
> And, generally, if the facts are known to the party recusing, he is bound to make his objection before issue joined, and before the trial is commenced, otherwise he will be deemed to have waived the objection . . . . If the objection be raised of record, and the court undertake to proceeding notwithstanding, the judgment might be held void under these principles . . . . But if no objection be made, and the court is permitted to go to a trial of the case on the merits, the judgment is clearly not void on its face, and something more than the mere existence of the fact on which the incompetency rests should be

required to authorize a resort to another tribunal.

Thompson, 958 S.W.2d at 172 (quoting Holmes v. Eason, 76 Tenn. 754, 757, 761 (1882)).

This situation falls squarely within the waiver rule recited in Thompson. The defendant did not object to Judge Jenkins' service in the court below. Clearly, he knew of the previous recusal and the basis therefor. Having now received an unfavorable verdict and sentence, he should not now be allowed to mount a belated attack to Judge Jenkins' impartiality in the absence of "something more than the mere existence of the fact on which the incompetency rests . . . ." Thompson, 958 S.W.2d at 172.

Moreover, this issue lacks merit. Judge Jenkins recused himself and his colleagues because "the victim" was an employee in the Criminal Court Clerk's office. Apparently, "the victim" left this employment, and Judge Jenkins resumed his duties with respect to the defendant's cases. Because the reason for recusal no longer existed when Judge Swann turned the cases back over to Judge Jenkins, the situation did not fall squarely within the provisions of the Code requiring formal consideration and memorialization of consent for the judge to hear the case. See Tenn. R. Sup. Ct. 10, Canon 3(F). Thus, Judges Jenkins and Swann cannot be faulted for failing to comply with those provisions.

## II

Next, the defendant contends that the evidence is insufficient to support the jury's findings of guilt beyond a reasonable doubt because the testimony of S.W. and M.T. was inconsistent and raised questions about their veracity and because S.W. was unable to identify the defendant at trial. In evaluating the

6

sufficiency of the evidence, it is relevant that S.W. was the victim of the especially aggravated robbery, two counts of aggravated rape, and especially aggravated kidnapping. M.T. was the victim of the theft.

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). On the contrary, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. Cabbage, 571 S.W.2d at 835.

In the case at bar, M.T. testified that an earring which the police took from the defendant was one of the earrings that "Baby" had stolen from her and that

7

the defendant had a gun, as well as a pipe. She admitted she may not have mentioned this to the police officers. S.W. mentioned nothing about a gun in her testimony. The trial in this case took place over six years after the offenses occurred. The defense highlighted the apparent inconsistency regarding the defendant's use of a gun to accomplish his crimes, yet the jury nevertheless chose to accredit the state's proof that the crimes occurred. It is not our province to revisit the jury's factual determinations.

Furthermore, the record reflects that S.W.'s inability to identify the defendant at trial was inconsequential in light of overwhelming proof of his identity as the perpetrator of the crime. The state presented evidence that S.W. had chosen the defendant from a photographic lineup six years earlier, when her memory was fresh. DNA evidence preserved in the rape kit and from aborted fetal tissue collected from S.W. established with a very high degree of certainty that the defendant had engaged in sexual relations with the victim.

The evidence sufficiently supports the defendant's convictions beyond a reasonable doubt.

### III

The defendant claims he was denied a fair trial by the trial court's admission of evidence of S.W.'s pregnancy and subsequent abortion. This evidence was admitted as proof of the defendant's identity via the DNA tests done on the aborted fetal material, which established the defendant's paternity of the fetus with 99.89 percent certainty. The defendant's specific complaint is that the evidence was cumulative of other DNA evidence and highly prejudicial.

"[Relevant] evidence may be excluded if its probative value is

8

substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. We review a trial court's decision to admit or exclude evidence only for abuse of discretion. See, e.g., State v. Bigbee, 885 S.W.2d 797, 807 (Tenn. 1994).

In the present case, the evidence was relevant for two reasons. First, as urged by the prosecutor at the hearing on the motion in limine to exclude the evidence, it was relevant to establish the defendant's identity. Second, the evidence was relevant to establish that S.W. suffered bodily injury from an aggravated rape as alleged in Count 6 of the indictment.[2] Cf., e.g., State v. Smith, 910 S.W.2d 457, 461 (Tenn. Crim. App. 1995) (under sentencing statute prescribing mitigating and enhancement factors, unwanted pregnancy constitutes bodily injury).

Viewing the evidence of S.W.'s pregnancy and abortion in light of its dual relevancy, we find no abuse of discretion in the trial court's ruling allowing its admission. Although it admittedly carried some component of prejudice to the defendant, any evidence probative of a defendant's guilt is prejudicial. Any prejudice which resulted from the admission of this evidence was not unfair. See State v. Gentry, 881 S.W.2d 1, 6 (Tenn. Crim. App. 1993). Further, the evidence was not needlessly cumulative. S.W. was unable to identify the defendant at trial. Also, the state was entitled to prove the defendant suffered bodily injury as alleged in Count 6.

---

[2]The defendant was not convicted of aggravated rape pursuant to Count 6. The indictment alleged alternatively aggravated vaginal rape while armed with a weapon (Count 4) and aggravated vaginal rape causing bodily injury (Count 6). The jury was instructed it could find the defendant guilty of one, but not both counts. They returned a verdict of guilt on Count 4.

Because the evidence was appropriately admitted under the Rules of Evidence, there is no basis for the defendant's claim of constitutional error.

## IV

In his next issue, the defendant claims the trial court erred in denying his motion for judgment of acquittal on the especially aggravated kidnapping count and two of the three aggravated kidnapping counts. Specifically, he claims the confinement necessary for the especially aggravated kidnapping conviction was only incidental to accomplishment of the aggravated rape convictions. Therefore, under State v. Anthony, 817 S.W.2d 299 (Tenn. 1991), separate convictions are impermissible under the due process provisions of article I, section 8 of the Tennessee Constitution.

In Anthony, the supreme court established the guidelines for determining whether a defendant may be convicted of kidnapping and another felony based upon a single criminal episode. Anthony was a consolidation of two cases, and in both, the defendant robbed a business establishment. Both defendants forcibly confined employees of the businesses they robbed by requiring them to remain in the same location or to move to a different location within the business establishments. Both defendants were convicted of robbery and kidnapping offenses.

In determining whether separate convictions were proper, the supreme court looked to "whether the confinement, movement, or detention is essentially incidental to the accompanying felony and is not, therefore, sufficient to support a separate conviction for kidnapping, or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction." Anthony, 817 S.W.2d at 306.

10

More recently, in State v. Dixon, 957 S.W.2d 532, 534 (Tenn. 1997), the supreme court cautioned that Anthony should not be read "to provide the rapist a free kidnapping merely because he also committed rape." In determining whether separate convictions may stand, the court must first consider "whether the movement or confinement was beyond that necessary to consummate the [sexual offense]." Dixon, 957 S.W.2d at 535. In this regard, "it is the purpose of the removal or confinement and not the distance or duration that supplies a necessary element of aggravated kidnapping." Dixon, 957 S.W.2d at 535. If the additional movement or confinement was beyond that necessary to consummate the offense, the court must then inquire whether that "additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm." Dixon, 957 S.W.2d at 535.

As charged in the indictment, especially aggravated kidnapping is false imprisonment accomplished with a deadly weapon. See Tenn. Code Ann. § 39-13-305(a)(1) (1997). False imprisonment is the knowing removal or confinement of another "unlawfully so as to interfere substantially with the other's liberty." Tenn. Code Ann. § 39-13-302(a) (1997).

The defendant emphasizes the fact that S.W. and M.T. voluntarily left the Carousel with the defendant and his companion. He contends that his act of moving S.W. a short distance from the car to the ball field was "slight, incidental and/or inconsequential," and therefore, separate convictions cannot stand.

We disagree that Anthony bars separate convictions on the facts of this case. The defendant used threats and application of force to confine S.W. to the vehicle when she tried to exit. Thereafter, he removed her to a more remote

11

location away from the other two individuals in the car, at least one of whom might interfere with his assault on S.W.  S.W. testified that during the first rape, the defendant became scared when a car drove by, so the defendant forced S.W. to move into the dugout.  The defendant remained alert to for passing vehicles during the events which transpired thereafter.  From these facts, it is apparent that the defendant's actions prevented the victim from summoning help and lessened the defendant's risk of detection.  See Dixon, 957 S.W.2d at 535.

Thus, the evidence clearly demonstrates that the removal and confinement were not incidental to the defendant's aggravated rapes of S.W.; rather, the defendant's actions were the proper basis for a separate conviction of especially aggravated kidnapping.  Cf. Dixon, 957 S.W.2d at 533 (separate convictions of aggravated kidnapping, aggravated assault and attempted sexual battery where defendant assaulted victim on sidewalk then dragged her behind bushes in vacant lot and attempted sexual assault).

V

Finally, the defendant alleges the trial court improperly sentenced him to an effective 100 year sentence.  For the felony convictions in this case, he received Range I sentences of 25 years for especially aggravated robbery, 25 years for each of two aggravated rape convictions, and 25 years for especially aggravated kidnapping.  Each of these sentences was imposed consecutively. He received 11 months and 29 days at 75 percent for the misdemeanor conviction of theft.  The misdemeanor sentence was imposed concurrently to the felony sentences.  The defendant's specific complaints are, first, that the trial court inappropriately applied enhancement factors in determining the length of his individual sentences, and second, that the trial court improperly ordered him to serve four of his five convictions consecutively, resulting in an effective sentence which violates the

12

Eighth Amendment.

In determining whether the trial court has properly sentenced an individual, this court engages in a de novo review of the record with a presumption that the trial court's determinations were correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our de novo review, we must consider the evidence at sentencing, the presentence report, the sentencing principles, the arguments of counsel, the statements of the defendant, the nature and characteristics of the offense, any mitigating and enhancement factors, and the defendant's amenability to rehabilitation. Tenn. Code Ann. § 40-35-210(b) (Supp. 1998); Tenn. Code Ann. § 40-35-103(5) (1997); Ashby, 823 S.W.2d at 168. On appeal, the appellant has the burden of showing that the sentence imposed is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Comments (1997); Ashby, 823 S.W.2d at 169.

In felony sentencing, the trial court has an affirmative duty to state in the record, either orally or in writing, which enhancement and mitigating factors it found and its findings of fact. Tenn. Code Ann. §§ 40-35-209(c) (1997); Tenn. Code Ann. § 40-35-210(f) (Supp. 1998); State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998). In contrast, the misdemeanor sentencing statute only requires that the trial court consider the enhancement and mitigating factors when calculating the percentage of the sentence to be served prior to "consideration for work release, furlough, trusty status and related rehabilitative programs." Tenn. Code Ann. §§ 40-35-302(d) (1997); Troutman, 979 S.W.2d at 274.

In imposing a felony sentence, the trial court must begin with the

13

presumptive minimum sentence. Tenn. Code Ann. § 40-35-210(c) (1990) (amended 1995).[3] It may then increase the sentence for any applicable enhancement factors and reduce it for any applicable mitigating factors. Tenn. Code Ann. § 40-35-210(d), (e) (1990) (amended 1998).

Although the trial court announced its consideration of the sentencing principles and made factual findings regarding the application of enhancement factors, it misapplied enhancement factors and did not specify how the enhancement factors applied to the individual felony convictions. Thus, our review of the defendant's felony sentences is de novo without the presumption of correctness. See State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992) ("If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness fails."); see also State v. Curtis Lee Majors, No. 01C01-9602-CR-00076, slip op. at 17-18 (Tenn. Crim. App., Nashville, July 30, 1997), perm. app. denied (Tenn. 1998).

The defendant before us was 21 years old when he committed these crimes and 27 years old when he came before the court for sentencing. He dropped out of the ninth grade and has no GED. His verified work history consists of six weeks of employment at Hardee's. He reported other employment in the food service industry which could not be verified. The defendant blamed his lack of stable employment on substance abuse, which began at age thirteen. Also, he has been in and out of prison all of his short adult life. He had been released from prison on parole status for eight days when he committed these offenses. His

_____

[3]Under the law applicable to the defendant, the presumptive sentence is the minimum within the range. See Tenn. Code Ann. § 40-35-210(c) (1990). In 1995, the Code was amended to provide that the presumptive sentence for a Class A felony is the midpoint within the range. See Tenn. Code Ann. § 40-35-210(c) (1997). The amendment applies to crimes committed on or after July 1, 1995. Acts 1995, Ch. 493, § 1.

criminal history at the time of sentencing consisted of convictions for two counts of aggravated robbery, first degree burglary, concealing stolen property, receiving stolen property, felony escape, violation of the registration law and driving without a license. Additional charges were pending for robbery and theft.

## Length of Sentences

In determining the length of the individual sentences, the trial court applied enhancement factors (1), (2), (4), (5), (7), (8), (11) and (13).[4] The defendant claims the trial court should not have applied factors (2), (4), (5) and (7). Because we are proceeding without the presumption of correctness, we will examine all of the enhancement factors applied by the trial court as well as any others supported by the evidence.

---

[4]    (1) The defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
(2) The defendant was a leader in the commission of an offense involving two (2) or more criminal actors;
. . .
(4) A victim of the offense was particularly vulnerable because of age or physical or mental disability . . .
(5) The defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense;
. . .
(7) The offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement;
. . .
(8) The defendant has a previous unwillingness to comply with the conditions of a sentence involving release in the community;
. . .
(11) The felony resulted in death or bodily injury or involved the threat of death or bodily injury to another person and the defendant has previously been convicted of a felony that resulted in death or bodily injury;
. . .
(13) The felony was committed while on any of the following forms of release status if such release is from a prior felony conviction:
     . . .
     (B) parole;
     . . .

Tenn. Code Ann. § 40-35-114(1), (2), (4), (5), (7), (8), (11), (13)(B) (1997).

15

The defendant does not contest that he has a previous history of criminal convictions or behavior. See Tenn. Code Ann. § 40-35-114(1) (1997). The evidence of his prior convictions supports the application of this factor to each of his present convictions.

The evidence supports a finding the defendant was a leader in the commission of some of the offenses. See Tenn. Code Ann. § 40-35-114(2) (1997). By all accounts, he was aggressive while his unidentified companion was quiet and passive. The defendant intimidated S.W. and M.T. through the application of force. This factor clearly applies to the especially aggravated kidnapping and especially aggravated robbery convictions. It should not apply to the two aggravated rape convictions because the defendant's companion was not an active participant in those crimes. Although its application to the theft conviction is arguable based upon the defendant's friend's statements that the defendant would make M.T. surrender her belongings, we decline to apply this factor to the theft conviction

The trial court incorrectly found that S.W. and M.T. were particularly vulnerable due to age.[5] See Tenn. Code Ann. § 40-35-114(4) (1997). Although the women were young, this factor may be applied only where the state proves that the victims were "particularly vulnerable" due to age because they were unable to resist, summon help or testify at a later date. State v. Kissinger, 922 S.W.2d 482, 487 (Tenn. 1996). In the present case, the state offered no such proof.[6]

The trial court also erred in its finding that the defendant treated S.W.

---

[5]The trial court accorded only slight weight to this factor.

[6]We infer that the state concedes this factor should not be applied from its failure to argue in its brief that the trial court's application of this factor was correct.

and M.T. with exceptional cruelty. See Tenn. Code Ann. § 40-35-114(5) (1997). This factor is generally applied in cases of abuse or torture. See, e.g., State v. Davis, 825 S.W.2d 109, 113 (Tenn. 1991); State v. Haynes, 720 S.W.2d 76, 80, 86 (Tenn. Crim. App. 1986). In effect, it requires a finding of cruelty above and beyond that inherently attendant to the crime itself. State v. Embry, 915 S.W.2d 451, 456 (Tenn. Crim. App. 1995). The cruelty employed by the defendant in this case was of a level inherent to the crimes committed.

With respect to the aggravated rape conviction on count four, the personal injuries inflicted on the victim were particularly great. See Tenn. Code Ann. § 40-35-114(6) (1997). The state's proof at trial established that S.W. became pregnant from the sexual assault. As a result, she underwent an abortion. See State v. Max Eugene Martin, No. 01C01-9609-CR-00414, slip op. at 6-7 (Tenn. Crim. App., Nashville, Apr. 29, 1998) (pregnancy and abortion), perm. app. denied (Tenn. 1998); cf. State v. Smith, 910 S.W.2d 457, 461 (Tenn. Crim. App. 1995) (pregnancy and childbirth); State v. Jones, 889 S.W.2d 225, 231 (Tenn. Crim. App. 1994) (pregnancy and childbirth).

The proof also supports a finding that the defendant committed the aggravated rapes and the especially aggravated kidnapping in order to gratify his desire for pleasure or excitement. See Tenn. Code Ann. § 40-35-114(7) (1997). In this case, the defendant apparently obtained some level of orgasm, as he impregnated his victim. See Kissinger, 922 S.W.2d at 490-91 (whether an offender attains orgasm is a factor that may be considered in determining whether factor (7) applies). S.W. testified that the defendant became enraged when she would not fondle him during the first rape. The defendant also made a lewd comment to his companion about S.W.'s anatomy after the second rape. These facts support a conclusion the defendant committed the rapes to gratify himself. Cf. Manning v.

17

State, 883 S.W.2d 635, 640 (Tenn. Crim. App. 1994) (defendant made explicit comments and fondled victim). Further, the kidnapping was ongoing during the rapes. There is evidence the abduction of the women was a predesigned plan to gratify the defendant's sexual desires. M.T. testified that when she refused to take her clothes off, the defendant's companion told her the defendant would make her do it.

The trial court found that the defendant's sentence should be enhanced because he had a previous history of unwillingness to comply with the conditions of a sentence involving release in the community. See Tenn. Code Ann. § 40-35-114(8) (1997). The court based its finding upon the fact that the defendant was on parole when he committed these offenses. However, this factor applies where there is a previous history of unwillingness to comply with the conditions of release, not where the only evidence is the commission of the present offense while on some form of release. State v. Hayes, 899 S.W.2d 175, 185-86 (Tenn. Crim. App. 1995). Despite the defendant's history of criminal activity, the record does not demonstrate that he committed crimes while serving earlier non-incarcerative sentences. Thus, this factor cannot be applied.

The state presented proof at the sentencing hearing that the defendant had a previous conviction for a felony which resulted in bodily injury via the testimony of Carol Ann Henderson, whom the defendant had been convicted of robbing while armed with a lead pipe. The felony convictions before the trial court all involved the threat of or actual bodily injury. Thus, each of the defendant's felony convictions should be enhanced under factor (11). See Tenn. Code Ann. § 40-35-114(11) (1997). The factor does not apply to the theft conviction.

The defendant did not contest at the sentencing hearing that he was

18

on parole when he committed these offenses. See Tenn. Code Ann. § 40-35-114(13)(B) (1997). The enhancement factor applies to each of his sentences.

The defendant does not challenge the trial court's determination that no mitigating evidence existed. Nevertheless, pursuant to our duty of de novo review, we have considered each of the mitigating factors listed in Code section 40-30-113, as well as the evidence of record for any indication of non-statutory mitigating evidence. See Tenn. Code Ann. § 40-35-113(13) (1997). We find no mitigating evidence.

To summarize, we find the following enhancement factors applicable to the defendant's felony convictions:

| Offense | Enhancement Factors |
|---|---|
| Especially Aggravated Robbery | (1), (2), (11), (13)(B) |
| Aggravated Rape - Count 3 | (1), (7), (11), (13)(B) |
| Aggravated Rape - Count 4 | (1), (6), (7), (11), (13)(B) |
| Especially Aggravated Kidnapping | (1), (2), (7), (11), (13)(B) |
| Theft | (1), (13)(B) |

Especially aggravated robbery, aggravated rape and especially aggravated kidnapping are all Class A felonies. For these offenses, the defendant is a Range I offender.[7] See Tenn. Code Ann. § 40-35-105 (1997). For a Class A felony committed by a Range I offender, the range of punishment is 15 to 25 years. Tenn. Code Ann. § 40-35-112(a)(1) (1997).

Turning first to the especially aggravated robbery conviction, we find enhancement factors (1), (11) and (13)(B) worthy of great weight. The defendant has a prodigious criminal record for someone so young. He has demonstrated a

---

[7]We have considered only those crimes listed in the state's Notice of Intent to Seek Enhanced Punishment in determining the defendant's sentencing range classification. See Tenn. Code Ann. § 40-35-202(a) (1997).

pattern of violence. Further, he committed these offenses only eight days after achieving parole status. He justly deserves a maximum sentence of 25 years.

Next, considering the aggravated rape conviction from count 3, the first of the two rapes, we again find factors (1), (11) and (13)(B) deserving of great weight for the reasons stated above. We find a maximum sentence of 25 years appropriate.

With respect to the aggravated rape conviction from count 4, the second rape, we weigh factors (1), (11) and (13)(B) heavily, as above. Further, factor (6) deserves great weight due to S.W.'s ordeal in becoming pregnant and having to undergo an abortion due to the defendant's criminal conduct. These factors make a maximum 25-year sentence well deserved.

For the last felony conviction of especially aggravated kidnapping, we again weigh factors (1), (11) and (13)(B) heavily. As a result, we again find a maximum sentence of 25 years appropriate.

Our final length-of-sentence determination relates to the misdemeanor theft sentence. Theft of property valued at $500 or less is a Class A misdemeanor. Tenn. Code Ann. § 39-14-105(1) (1997). Punishment for a Class A misdemeanor can be no greater than 11 months and 29 days.

Bearing in mind, as we must, the sentencing considerations, the applicable enhancement factors and the lack of mitigating factors, we believe a maximum sentence of 11 months and 29 days at 75 percent service prior to being eligible for work release, furlough, trusty status and other rehabilitative programs is appropriate. See Tenn. Code Ann. § 40-35-302(d) (1997).

**Consecutive Sentencing**

The final component of our sentencing review involves whether consecutive sentencing is appropriate for this defendant. In general, consecutive sentencing may be imposed in the discretion of the trial court upon a determination that one or more of the following criteria exist:

(1)     The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;

(2)     The defendant is an offender whose record of criminal activity is extensive;

(3)     The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4)     The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5)     The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6)     The defendant is sentenced for an offense committed while on probation; or

(7)     The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b) (1990). In State v. Wilkerson, 905 S.W.2d 933, 937-38 (Tenn. 1995), the supreme court imposed two additional requirements for consecutive sentencing -- the court must find consecutive sentences are reasonably related to the severity of the offenses committed and are necessary to protect the public from further criminal conduct. At this time, it is unsettled whether Wilkerson applies to all seven of the statutory categories for consecutive sentencing or only the "dangerous offender" category. See State v. David Keith Lane, No. 03C01-

21

9607-CC-00259, slip op. at 11 (Tenn. Crim. App., Knoxville, June 18, 1997), perm. app. granted (Tenn. 1998).

Because we have stripped the trial court of the presumption of correctness in its sentencing determination, we review the issue of consecutive sentencing de novo.

The trial court found that the defendant is a professional criminal who knowingly devoted his life to criminal acts as a major source of his livelihood. See Tenn. Code Ann. § 40-35-115(b)(1) (1997). Upon de novo review, we agree that the existence of this factor has been established by a preponderance of the evidence. See Tenn. Code Ann. § 40-35-115(b) (1997). Although young at the time of his crimes, the defendant had already amassed convictions for robbery, burglary and stolen property related offenses. In stark comparison, his work history when not incarcerated is almost non-existent. He had a history of abusing alcohol, marijuana, cocaine and Valium on a regular basis. He reported to the presentence officer, "I was a drug addict in [sic] needed money to support my habits [sic] so thats [sic] what cause [sic] me to robb [sic]." These facts support the application of consecutive sentencing under Code section 40-35-115(b)(1). Cf. State v. Jason Morin, No. 02C01-9512-CR-00370, slip op. at 11 (Tenn. Crim. App., Jackson, June 2, 1997) (defendant's extensive criminal record including several theft offenses, lack of employment at the time of the crime and sketchy work history support finding that he is a professional criminal under Code section 40-35-115(b)(1)).

The trial court also found that the defendant was an offender with an extensive record of criminal activity. See Tenn. Code Ann. § 40-35-115(b)(2) (1997). On de novo review, we find this conclusion supported by a preponderance of the evidence. See Tenn. Code Ann. § 40-35-115(b) (1997). The defendant has

22

a lengthy record of criminal convictions for someone of his young age. The presentence report indicates that he has used illicit drugs since age 13. Further, he has engaged in criminal activity while incarcerated.

The third basis upon which the trial court premised consecutive sentencing was that the defendant was a dangerous offender as described in Code section 40-35-115(b)(4). The record supports our de novo conclusion that this factor applies to the defendant. He employed a lead pipe to ensure the successful commission of his crimes. He also assaulted S.W. by repeatedly punching her in the face with his fist, and he hit both S.W. and M.T. with the pipe. In addition, there was evidence he assaulted Ms. Henderson with a lead pipe during another crime. S.W. testified that she complied with the defendant's demands because she was concerned for her life. M.T. testified that she was concerned for S.W.'s life, as well. The preponderance of the evidence supports a conclusion that the defendant would have employed as much violence as was necessary to the perpetration of his crimes. Thus, his behavior "indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high[.]" See Tenn. Code Ann. § 40-35-115(b)(4).

With respect to the Wilkerson factors, the defendant clears this final hurdle for consecutive sentencing. Consecutive sentences are reasonably related to the severity of these offenses and the public deserves protection from further criminal conduct by this defendant. See Wilkerson, 905 S.W.2d at 937-38. Only eight days out of prison on parole, the defendant committed four Class A felonies. He began his criminal career at an early age and has distinguished himself as a hardened criminal by graduating from property and drug crimes to violent felonies against other persons.

23

Although our review is de novo, we have come to the same conclusion as that reached by the trial court -- the defendant's felony sentences should all be served consecutively to each other, and the misdemeanor theft sentence should be served concurrently to the especially aggravated robbery conviction. Furthermore, the defendant's sentences should be served consecutively to the sentence for which he was on parole at the time he committed these offenses. See Tenn. R. Crim. P. 32(c)(3)(A).

Finally, with respect to the defendant's argument that his sentence violates the Eighth Amendment prohibition against cruel and unusual punishment, our consideration of this issue has been waived. In his brief, the defendant devoted a cursory, one-sentence argument to this proposition. He has failed to cite any authority beyond the Eighth Amendment itself. When a party fails to provide a sufficient argument and citation to relevant authorities, this court treats the affected issue as waived. Tenn. R. Ct. Crim. App. 10(b); see Tenn. R. App. P. 27(a). Moreover, despite the defendant's deficient argument, no Eighth Amendment violation is readily apparent.

In sum, the defendant's appellate issues are without merit. The judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

CONCUR:


_____
DAVID H. WELLES, JUDGE


_____
L.T. LAFFERTY, SPECIAL JUDGE

24